IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

SHERVON EGBERT JOSEPH,
                    *Petitioner*,
        v.

MARKWAYNE MULLIN, *et al.*,
                    *Respondents*.

1:26-cv-01318-MSN-WBP

## ORDER

This matter comes before the Court on Shervon Egbert Joseph's ("Petitioner") Petition for Writ of Habeas Corpus (ECF 1) in which he challenges the lawfulness of his detention by Immigration and Customs Enforcement ("ICE"). Petitioner, a native of St. Lucia, has resided in the United States since 1994. In 2013, Petitioner received a final order of removal. ICE then held Petitioner in custody for six months before releasing him from custody on an Order of Supervision. On April 17, 2026, ICE re-detained Petitioner during an immigration check-in. Petitioner contends that his renewed detention violates 8 U.S.C. § 1231, as interpreted by *Zadvydas v. Davis*, 533 U.S. 678 (2001) (Count I); his right to due process (Count II); and regulations governing his Order of Supervision (Counts III and IV).

For the reasons that follow, the Court concludes that Petitioner's continued detention violates 8 C.F.R. § 241.4(*l*) and will grant his Petition as to Counts III and IV.

## I.    BACKGROUND

Petitioner is a 46-year-old native and citizen of St. Lucia who entered the United States in 1994 on a tourist visa. ECF 6-1 ¶¶ 5-6. Petitioner remained in the country after his tourist visa expired and, in subsequent years, was convicted of a number of offenses, including possession of marijuana. *Id.* ¶ 7; *see also* ECF 1-3 at 6-7. Petitioner's convictions led an Immigration Judge to order his removal on June 5, 2013. ECF 1 ¶ 30. He subsequently appealed the Immigration Judge's

decision to the Board of Immigration Appeals ("BIA"), which dismissed his appeal on November 7, 2013. *Id.* Petitioner then filed a motion for reconsideration, which the BIA denied. *Id.*

Between November 7, 2013, and May 20, 2014, DHS kept Petitioner detained to effectuate his removal. ECF 1 ¶ 31; ECF 1-2 at 3. DHS, however, was unable to remove Petitioner to St. Lucia, and so, on May 20, 2014, it released Petitioner on an Order of Release on Supervision. ECF 1-2 at 3.

Petitioner alleges that, after his release, he regularly attended check-ins with ICE. *See* ECF 1 ¶ 32. Apart from traffic violations, he has amassed no further criminal history. *Id.* ¶ 34. Petitioner is now married to a U.S. citizen and has at least one U.S. citizen child.[1] *Id.* ¶ 49; ECF 1-4 at ¶ 2.

On April 17, 2026, Petitioner attended a check-in with ICE. ECF 1 ¶ 36. He alleges that, without prior warning, ICE arrested him because he had received a "final order of removal." *Id.* ¶¶ 39-40. That same day, ICE issued Petitioner a Notice of Revocation of Release, stating that it was revoking his release pursuant to 8 C.F.R. § 241.4(*l*) to enforce the removal order entered against him. ECF 6-2 at 2-3. The Notice indicated that ICE was "seeking a travel document" to effect his removal to St. Lucia and was signed by Robert Gaudian, the Field Office Director of the ICE Washington Field Office. *Id.* Petitioner disputes having received this document. ECF 7-3 ¶¶ 8–9. ICE has also filed a record indicating that it conducted an interview with Petitioner on the day of his detention to explain the reasons for the revocation of his order of supervision. ECF 6-2 at 4.

After detaining Petitioner, ICE transferred him to the Farmville Detention Center, where he remains detained. ECF 1 ¶ 42. ICE has indicated that it is "working to obtain travel documents for Petitioner." ECF 6-1 ¶ 14. Petitioner, meanwhile, alleges that, when he refused to sign

---

[1] The record reflects some discrepancy as to whether he has one or two U.S. citizen children. *Compare* ECF 1-4 at ¶ 2 *with* ECF 1-6 at 2.

paperwork related to requesting travel documents, a deportation officer told him that "she would fill them herself as if she were [Petitioner]." ECF 7-3 ¶ 4.

On May 15, 2026, Petitioner filed this Petition against Markwayne Mullin, the DHS Secretary; the Acting Director of ICE[2]; Todd Blanche, the Acting Attorney General; and Robert Guadian, the Field Office Director of ICE's Washington Field Office (collectively "Federal Respondents"). ECF 1. The Petition also names Jeffrey Crawford, the warden of the Farmville Detention Center. *Id*. Petitioner seeks his immediate release.[3] *Id*.

## II.   DISCUSSION

Petitioner argues that his detention violates the Immigration and Nationality Act ("INA") and his right to due process. He further argues that the Federal Respondents violated the INA's implementing regulations and the *Accardi* doctrine in revoking his Order of Supervision. The Court addresses each argument in turn.

### A.   Petitioner's INA and Due Process Claim Regarding His Current Detention

Under 8 U.S.C. § 1231, which governs the detention of noncitizens like Petitioner who have received a final order of removal, noncitizens shall be detained during a ninety-day "removal period" following their final order to effectuate their removal. 8 U.S.C. §§ 1231(a)(1)(A), (2)(A). If DHS is unable to effectuate a person's removal within the 90-day deadline, DHS may release them subject to terms of supervision. 8 U.S.C. §§ 1231(a)(3). DHS may later re-detain a person who has been released on an order of supervision if, for instance, there has been a change in circumstances or DHS becomes able to conduct their removal. *See* 8 C.F.R. §§ 241.4(*l*); 241.13(i)(2). DHS may also continue to detain a noncitizen past the 90-day removal deadline in

---

[2] The Petition names Todd Lyons, who was the Acting Director of ICE at the time the Petition was filed.

[3] Petitioner also asks this Court to enjoin the Federal Respondents from removing him to any country without an opportunity to apply for withholding of removal. Petitioner, however, has given no indication that he has been denied an opportunity to apply for withholding. Accordingly, the Court concludes that this request is not yet ripe.

certain circumstances, including where the noncitizen is inadmissible or DHS determines that the noncitizen is "a risk to the community or unlikely to comply with the order of removal." 8 U.S.C. § 1231(a)(6); *see also Castaneda v. Perry*, 95 F.4th 750, 755 (4th Cir. 2024).

While 8 U.S.C. § 1231(a)(6) does not impose an explicit time limit on the length of a noncitizen's detention following a final removal order, the Supreme Court has recognized that "serious constitutional concerns" would arise if § 1231 were interpreted to allow for "indefinite detention." *Zadvydas*, 533 U.S. at 682. Thus, in *Zadvydas*, the Supreme Court construed § 1231 to contain an implicit limit on terms of detention, "the application of which is subject to federal-court review." *Id.* Under *Zadvydas*, a noncitizen's detention pursuant to § 1231 is presumptively unlawful and violates due process if his detention extends for more than six months and the petitioner "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* at 701. If a petitioner makes this showing, the burden shifts to the government to rebut the showing. *Id.*

Petitioner has not met his burden to show that he is unlikely to be removed in the foreseeable future. Even if the Court considers the length of Petitioner's initial detention, *see Nguyen v. Scott*, 796 F. Supp. 3d 703, 721–22 (W.D. Wash. 2025) (noting that "the six-month period does not reset when the government detains a noncitizen, releases him from detention, and then re-detains him again" (cleaned up)), Petitioner has shown no evidence that the Federal Respondents will not be able to remove him to St. Lucia. That is not to say that Petitioner will not be able to make this showing in the future. *See Zadvydas*, 533 U.S. at 701 ("[A]s the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely [will] shrink."). But on the facts currently before the Court, Petitioner has not shown

4

that his continued detention runs afoul of *Zadvydas* and due process. The Court will therefore dismiss Claims I and II without prejudice.[4]

### B.        Revocation of Petitioner's Order of Supervision

In Count III and IV, Petitioner claims that the revocation of his Order of Supervision violates 8 C.F.R. § 241.4, and the *Accardi* doctrine, which requires an agency to follow the procedural safeguards established by its own regulations.[5] *United States v. Morgan*, 193 F.3d 252, 266 (4th Cir. 1999). An agency's failure to follow those regulations "may result in the invalidation of the ultimate administrative determination." *Id.* Ordinarily, an agency's failure to follow it regulations will only render its determination invalid if an individual can demonstrate that they were prejudiced by the deviation. *Id.* at 267. Prejudice, however, may be presumed where "compliance with the regulation is mandated by the Constitution and where an entire procedural framework, designed to insure the fair processing of an action affecting an individual is created but then not followed by an agency." *Santamaria Orellana v. Baker*, No. 25-cv-1788-TDC, 2025 WL 2444087, at *5 (D. Md. Aug. 25, 2025) (internal quotation marks omitted).

The INA's implementing regulations provide that a noncitizen "who has been released under an order of supervision or other conditions of release who violates the conditions of release may be returned to custody." 8 C.F.R. § 241.4(*l*)(1). The regulations limit who can revoke an order

---

[4] In his Reply brief, Petitioner argues that his detention demonstrates "exceptional circumstances" that entitle him to bring a due process challenge to his detention outside of the *Zadvydas* framework. ECF 7 at 11-15. In *Castaneda*, the Fourth Circuit assumed without deciding that "as-applied due process challenges to § 1231 detentions may proceed outside the *Zadvydas* framework when the [noncitizen] presents, as a threshold matter, exceptional circumstances warranting that departure," such as a showing of "bad-faith or careless dilatory conduct" on the part of the Government. 95 F.4th at 761. The Court discerns no such exceptional circumstances here. Petitioner principally points to ICE's failure to give him time to prepare for his informal interview with his attorney and to promptly turn over documents related to his detention. *Id.* at 12-13. Such issues do not rise to the level of "extraordinary circumstances" that *Castaneda* demands.

[5] Petitioner also argues that the Federal Respondents failed to follow the requirements of 8 C.F.R. § 241.13(i)(2) in revoking his release. His release, however, was revoked under 8 C.F.R. § 241.4, not 8 C.F.R. § 241.13(i)(2). *See* ECF 6-2 at 2. Petitioner abandoned any claim under 8 C.F.R. § 241.13(i)(2) in his Reply brief, and so the Court will only address § 241.4.

of supervision. They state that the "Executive Associate Commissioner shall have authority, in the exercise of discretion, to revoke release and return to Service custody [a noncitizen] previously approved for release under the procedures in this section." 8 C.F.R. § 241.4(*l*)(2). "A district director may also revoke release of [a noncitizen] when, in the district director's opinion, revocation is in the public interest and circumstances do not reasonably permit referral of the case to the Executive Associate Commissioner." *Id.*

Here, the Federal Respondents issued Petitioner a Notice of Revocation of Release under 8 C.F.R. § 241.4(*l*), signed by Respondent Guadian, the Field Office Director of the ICE Washington Field Office. ECF 6-2 at 2-3. Guadian is a district director, not an Executive Associate Commissioner. Yet there is no indication that Guadian determined that revocation was in the public interest or that circumstances do not reasonably permit referral of the case to the Executive Associate Commissioner, as required by 8 C.F.R. § 241.4(*l*)(2). As this Court has previously concluded, "the requirement that a senior official 'make the determination to revoke release—that is, to restrict a person's liberty—is not merely a housekeeping requirement' but instead 'part of a procedural framework, designed to insure the fair processing of an action affecting an individual, a violation of which can be deemed to be prejudicial and thus to implicate due process.'" *Lu v. Noem*, No. 1:25-cv-00390-MSN-IDD, 2026 WL 1244546, at *5 (E.D. Va. Mar. 2, 2026) (quoting *Serpas v. Simon*, --- F. Supp. 3d ---, 2026 WL 1244544, at *5 (E.D. Va. Feb. 3, 2026)); *see also Santamaria Orellana v. Baker*, No. 25-cv-1788-TDC, 2025 WL 2841886, at *5 (D. Md. Oct. 7, 2025)). Because the Federal Respondents failed to comply with 8 C.F.R. § 241.4(*l*)(2), the Court concludes that the revocation of Petitioner's release violated the *Accardi* doctrine, entitling him to release. *See, e.g.*, *Rojas Toj v. Mullin*, No. 1:26-cv-1142-MSN-WBP, 2026 WL 1458900, at *5 (E.D. Va. May 21, 2026) ("[T]he proper remedy for an *Accardi* violation is a petitioner's release." (citation omitted)).

### III.    CONCLUSION AND ORDER

For the foregoing reasons, the Court concludes that the Federal Respondents failed to properly revoke Petitioner's Order of Supervision in violation of the *Accardi* doctrine. Accordingly, it is hereby

ORDERED that the Petition is GRANTED as to Counts III & IV; and it is further

ORDERED that Federal Respondents immediately release Petitioner with all his personal property; it is further

ORDERED that Petitioner's Order of Supervision is RESTORED immediately and may not be revoked unless done so in compliance with the requirements of 8 C.F.R. § 241.4; and it is further

ORDERED that Counts I and II of the Petition are DISMISSED WITHOUT PREJUDICE.

It is SO ORDERED.

The Clerk is directed to enter judgment in Petitioner's favor pursuant to Federal Rule of Civil Procedure 58, forward copies of this Order to counsel of record, and close this civil action.

/s/
_____
Michael S. Nachmanoff
United States District Judge

June 5, 2026
Alexandria, Virginia

7